# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **GUILLERMO HERRERA III,** | ) | **8:15-cv-426-JMG-CRZ** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **UNION PACIFIC RAILROAD COMPANY**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(SECOND CLAIM FOR RELIEF)**

COMES NOW Defendant Union Pacific Railroad Company ("Union Pacific"), by and through its undersigned counsel, pursuant to NELR 56.1,  and submits its Response In Opposition to Plaintiff's Motion For Partial Summary Judgment.

## I.   INTRODUCTION

Summary judgment is not appropriate in this case because there are disputes about the factual evidence needed to prove the critical elements of Plaintiff's claim under 49 U.S.C. § 20109(c)(1).  The majority of Plaintiff's 124 paragraphs included in Plaintiff's Statement of Undisputed Material Facts provides the Court with factual background of case, but do not give the Court the uncontroverted evidence needed for Plaintiff to prevail on his Motion for Partial Summary Judgment.  Moreover, Plaintiff's entirely ignores facts that are in conflict with his claim that Union Pacific delayed, denied, or interfered with his medical treatment.  Simply ignoring the evidence that does not support Plaintiff's theory and does not make such evidence vanish.  The jury, sitting as fact-finder, must resolve the parties' disputes of material facts  to determine if Union Pacific violated 49 U.S.C. § 20109(c)(1).  Accordingly, because the parties dispute critical material facts, the Court should deny Plaintiff's Motion for Partial Summary Judgment.

## II.   UNION PACIFIC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 1. Plaintiff was working on Union Pacific Railroad Steel Gang 8501 on July 24, 25, and 26, 2015, on Cook Siding, 22.8 miles from Onaga, Kansas. (Exhibit 4 to Plaintiff Depo., Job Briefing 8501 Work Group.) | 1. For the purposes of this Response, Plaintiff's material fact number 1 is undisputed. |
| 2. Joe Linford was a supervisor of Rail Northwest for Defendant, including UPRR Steel Gang 8501. (Exhibit 1, Linford Depo., 7:20-25.) He is the on-the-job, on-site supervisor of the gang. (*Id.*, 14:21-22.) | 2. For the purposes of this Response, Plaintiff's material fact number 2 is undisputed |
| 3. The chain of command on UPRR Steel Gang 8501 on July 26, 2016 was: Louis Martinez was the Director; Michael Rolow was the manager; Carlos Diaz and Joseph Linford were the ARSA supervisors. (*Id.*, 15:15-25.) The surfacing gang foreman was Robert "Bobby" Herrera. (*Id.*, 16:11-15.) Scott Nicholson was the assistant foreman with supervisor authority over the clean-up/quality control gang, to which Plaintiff was assigned. (*Id.*, 17:9-16.) | 3. For the purposes of this Response, Plaintiff's material fact number 3 is undisputed. |
| 4. UPRR Steel Gang 8501 is considered a steel gang, so one of its main jobs is going around replacing steel track throughout the railroad. It also does pad replacement…on concrete ties. (*Id.*, Linford Depo., 8:6-10.) | 4. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 4 is undisputed. |
| 5. UPRR Steel Gang 8501 is called a system gang. So anywhere within the rail northwest, it can travel and do different work locations. So a variety of states that it works in.  (*Id.*, 8:19-22.) | 5. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 5 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 6. Union Pacific Railroad Steel Gang 8501 worked the first eight days of a month, followed by seven rest days, then the second eight days of the month, followed by seven rest days. During each of these "halves," the gang will work 10-hour days or 11-hour days, straight time. Like all construction work, there is some overtime involved. (*Id.*, 10:5-11:9.) | 6. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 6 is undisputed. |
| 7. Union Pacific Railroad Steel Gang 8501 had been working in California but, following a seven-day rest half, had begun to work in Onaga, Kansas on July 24, 2015. (*Id.*, 9:19-10:4.) | 7. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 7 is undisputed. |
| 8. July 24, 2015 was a travel day (a day that permitted members of the gang to drive from their homes to Onaga, Kansa, to begin work with the gang at the end of their rest days). Approximately 10 to 12 employees were brought in on July 24 to unload the track machines that make up the steel gang from railroad cars on which they had been transported from California to Onaga, Kansas. (*Id.*, 9:19-10:4.) | 8. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 8 is undisputed. |
| 9. Steel Gang 8501 is akin to a big assembly line with anywhere from 24 to 27 pieces of equipment. The first machines straighten out any slewed ties. The next machines will curb ballast away. Next are machines that grab a tie to make sure that it is straight. Then a mini surfacing gang, comprised of a tamper, regulator, establishes a foundation for the ties and the ballast and for the new rails that are going to be placed on the ties. (*Id.*, 18:2-19:1.) | 9. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 9 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 10. Next in the process is a "declipping process," which removes the fasteners that are holding the rail onto the ties. This gang is working on concrete ties rather than wood ties, the primary difference being rail is held onto wood ties by spikes and tie plates; rail is held onto the concrete ties by metal clips that are added to clips already on the concrete ties to attach the base of the rail to the concrete tie. (*Id.*, 19:7-12.) | 10. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 10 is undisputed. |
| 11. Next, a large machine picks up the old rail and lays in place the new rail. (*Id.*, 19:12-16.) | 11. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 11 is undisputed. |
| 12. Next is the clipping process. This is accomplished by a large Harsco machine that puts the rail back into a neutral temperature state, applies insulators and clips, clipping the rail back into place. (*Id.*, 19:21-25.) | 12. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 12 is undisputed. |
| 13. Next is the quality control, or clean-up crew. The clean-up crew is responsible for everything being 100% when the gang's tasks are accomplished. (*Id.*, 20:1-9.) | 13. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 13 is undisputed. |
| 14. Assigned to the clean-up gang is a P-car, a machine that will be up in front that clips the clips and declips the metal clips from the base of the rail. | 14. Plaintiff failed to cite evidentiary support for this statement. Nevertheless, 14 For the purposes of this Motion, Plaintiff's material fact number 14 is undisputed. |
| 15. It is the P-car that clips and declips the clips that are attached to the concrete tie to hold a rail in place on the concrete tie. (*Id.*, 23:16-24.) | 15. This paragraph is not a does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's ¶ number 15 is undisputed. |
| 16. If the P-car is working properly, Mr. Linford expects it to be used, absolutely. (*Id.*, 61:15-17.) | 16. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 16 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 17. On July 24, 2015, Assistant Foreman Charles Turner, who was assisting in offloading the machines in Onaga, suffered a heat-related problem. He started feeling a little dizzy, dropped down to his knees, set on his back. A coworker radioed that he was laying down; that he was in distress. They picked him up in a speed swing to carry him to the head of the gang. He was loaded into the speed swing by several coworkers grabbing parts of his body, lifting him down from where he was laying, and assisting him getting into the cab of the speed swing. Instead of being taken to the hospital, he was taken to the job briefing area in Onaga, Kansas. He remained in the job briefing trailer at the job briefing site in Onaga for the remainder of the day, four to five hours. With him in the job briefing trailer were Dave Birt and Charlie (Carlos) Diaz. (Exhibit 6, Turner Depo., 12:11-14:2, 15:2-6, 16:5-24, 18:11, 19:2-12.) | 17. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).   Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 17 is undisputed. |
| 18. It is no further than 20 minutes drive time from the job site at Cook Siding, where the gang was working, to the job briefing site in Onaga. (*Id.*, 24:9-12.) | 18.  Disputed.  Mr. Turner testified that he did not remember the name of the siding:<br><br>Q.  Do you have a memory from either your experience driving to and from that job site how far it is from the -- you all were working on a siding called Cook Siding.  Does that -- does that jibe with your memory?<br><br>A.   I can't recall the actual name.  (Union Pacific's Exhibit A Deposition of Turner Charles 23:22- 24:2.)  Mr. Cox then asked Mr. Turner the travel time between the job site to the job briefing site with the trailer.  (*Id.* at 24:6-12.)  It is to this question that Mr. Turner responded with a time of 20 minutes. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 19. Scott Nicholson was the Assistant Foreman in charge of the clean-up crew working near the end of the steel gang assembly line, of which Plaintiff was a member. | 19.   For the purposes of this Motion, Plaintiff's material fact number 19 is undisputed. |
| 20. Mr. Nicholson was new to the gang. (Exhibit 7, Nicholson Depo., 20:10.) | 20.   For the purposes of this Motion, Plaintiff's material fact number 20 is undisputed. |
| 21. The first time Mr. Nicholson had ever worked on a steel gang working on concrete ties was on July 25, 2015. (*Id.*, 23:15-21.) | 21.   For the purposes of this Motion, Plaintiff's material fact number 21 is undisputed. |
| 22. Plaintiff was supposed to be operating the P-car but Assistant Foreman Scott Nicholson did not want Plaintiff using the P-car, so he would drive it up so far and we (Plaintiff and his coworker) would stay behind and do everything with the sledgehammers and a manual declipper. (Exhibit 8, Plaintiff Depo., 65:2-14.) | 22.   Disputed in part because the statement failed to inform why Mr. Nicholson pulled Plaintiff from his P-Car duties.  Mr. Nicholson informed Plaintiff not to use the P-Car car because Plaintiff missed pulling many clips when operated the P-Car.  The mistakes he was making were partially operator error: <br><br> Q.   And was Guillermo Herrera working as a laborer?  Or... <br><br> A.   He was supposed to be the P-Car operator. And on the 25th, he operated the P-Car for the majority of the day, helped on the ground when he could.  And then on the 26th, he was running the P-Car, but there was so much clips that were having to be removed, he was missing alot and not getting them pulled. So Scott Nicholson, the assistant foreman, decided it would be better for him to not use the P-Car and to just come back and pull them by hand. <br><br> Q.   All right.  Why did that -- what's your -- I mean, how did you learn that Scott Nicholson wanted Guillermo Herrera to do it by hand, rather than use the P-Car?  Did you hear it? <br><br> A.   Yeah.  He kept talking about how that's faster, it will be faster.  **Because [Plaintiff is] missing so many clips, we were having to pull them anyway, behind him.  But there was so many clips being pulled that by not using the machine, it creates a lot of extra** |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| | **physical, manual labor.** |
| | Q. All right. And why is -- why are the -- why is the P-Car not pulling the clips? Or... |
| | A. Either missing them, not seeing them, or sometimes when the -- because I ran a P-Car for a little bit when we were in California. If the ties are really crooked, the machine has trouble getting ahold of the clip. |
| | Q. It's not anything about the skill of the operator, it's just the positioning of the ties? |
| | A. Right. **And, well, he was new on the machine. He hadn't run it a lot. So, I mean, operator skill does fit into it, to a point**. |
| | (Union Pacific's **Exhibit B**, Deposition of Dennis Dickison 30:20-32:10.) (Emphasis added.) |
| 23. The main production part of Steel Gang 8501 moved ahead of the clean-up crew. Because the quality of the track was poor due to low ties and crooked ties, the clean-up crew was having to do a lot of clean-up work in the back to make the track 100%. (Exhibit 9, Dickison Depo., 23:15-20.) | 23. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 23 is undisputed. |
| 24. Due to the poor quality that the main production part of the gang was producing, (the clean-up crew) (was) having to redo a lot of what they had done. The clean-up crew had to make sure the biscuits and clips are all in to make the track safe for travel. (*Id*., 24:10-14.) | 24. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 24 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 25. The Clean-up crew was undermanned needing more laborers. (Exhibit 58 to Dickison Depo., Statement of Dennis Dickison.) It consisted of Plaintiff, Assistant Foreman Scott Nicholson, and Camp Car operator Dennis Dickison. (Exhibit 10, Newman Depo., 26:18-22.) Dennis Dickison was on light duty and not able to do all of the physical labor required of the clean-up crew. (Id., 27:9-20.) | 25. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 25 is undisputed. |
| 26. Under normal conditions, the P-car assigned to the clean-up crew (a track-mounted machine) is used to apply or remove the clips to clip or de-clip the base of the rail to the concrete tie. (Exhibit 5 to Plaintiff Depo., photo of Union Pacific Railroad PCAR 1401.) | 26. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, disputed in Part. The P-Car primarily de-clips:<br>    Q   What does the P-car do again?<br>    A   It mainly de-clips.<br>(Union Pacific **Exhibit C** Deposition of Joseph Linford 61:12-13.) |
| 27. Plaintiff was assigned as the P-car operator. (Exhibit 8, Plaintiff Depo., 65:5-14.) | 27. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 27 is undisputed. |
| 28. However, Scott Nicholson decided it would be better for Plaintiff to not use the P-car and just come back and pull the clips by hand. (Exhibit 9, Dickison Depo., 31:4-7.) | 28. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Disputed in part as written. *See* Union Pacific's response to Statement 22. |
| 29. Because there were so many clips being pulled, by not using the machine it created a lot of extra physical, manual labor. (*Id.*, 31:19-21.) Before 9:00 a.m. on July 26, 2015, Plaintiff had been performing all of the physical labor duties on the clean-up gang. (Exhibit 10, Newman Depo., 27:22-25.) | 29. This paragraph is not a does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Disputed in part as written. See Union Pacific's response to Statement 22. |

9

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 30. When Plaintiff asked Assistant Foreman Nicholson to use the P-car to clip or de-clip the rail, he was informed by Assistant Foreman Nicholson to do the clean-up work by hand. (Id., 36:12-37:3.) When Mr. Marsing and Plaintiff talked with Assistant Foreman Scott Nicholson about using the P-car on 07/25/15, they were informed to shut down the P-car and do the cleanup by hand. (Exhibit 11, Marsing Depo., 30:6-25.) | 30. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 30 is undisputed. |
| 31. P-cars, if they are fully operational, should be utilized to the fullest extent that they can be. (Exhibit 12, Rolow Depo., 40:24-41:2.) | 31. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 31 is undisputed. |
| 32. When the P-car is not used, it definitely makes the physical work of the laborers harder. (Exhibit 10, Newman Depo., 36:23-25.) | 32. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact 32 is undisputed. |
| 33. The clean-up gang was falling behind the rest of the gang because they were having to clip and de-clip the ties by hand and didn't have the manpower to keep up with the gang. (Id., 37: 6-8.) | 33. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 33 is undisputed. |
| 34. On the siding in Onaga where Steel Gang 8501 was working, there were a lot crooked, skewed ties and low ties, where they were actually lower than the rail. To attach the biscuits and clips on them, you have to dig them out of the ballast and move them with a jack. (Exhibit 9, Dickison Depo., 10:9-11:14.) | 34. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 34 is undisputed. |
| 35. Quite a bit of work is involved to do this. The most strenuous part of the work is digging out the ballast to where the tie is movable. (Id., 12:11-13.) | 35. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 35 is undisputed. |

10

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 36. These were standard 8-foot concrete ties. Each tie weighs 650 lbs. (Exhibit 14, Defendant's Answers to Plaintiff's Fifth Set of Interrogatories, No. 29.) | 36. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 36 is undisputed. |
| 37. Mr. Herrera and Mr. Newman, the only members of the clean-up crew present and performing this heavy physical work (after Mr. Newman arrived about 9:00 a.m.), had to use a lining bar to lift the concrete tie, once it was loosened from the ballast, to where its top can be positioned at the bottom, or base, of the rail so that the metal clip can be hammered on to attach the rail to the tie. It is strenuous physical work. (Exhibit 9, Dickison Depo., 13:4-15:3.) (See Exhibit 71 to Gavalla Depo., photo of ballast, tie, clips, and rail.) Mr. Dickison, the Camp Car operator, was working on light duty because of a medical procedure, and could not assist in this heavy work. (Exhibit 9, Dickison Depo., 20:19-22:4.) | 37. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 37 is undisputed. |
| 38. Plaintiff and Logan Newman were drinking plenty of water. They tried to take breaks and hydrate themselves as much as they could. (Exhibit 10, Newman Depo., 39:17-25.) | 38. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 38 is undisputed. |
| 39. The heat was "devastating." (*Id.*, 42:23-43:8.) | 39. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 39 is undisputed . |
| 40. It was hot, humid and sunny. It was a very muggy kind of day. (*Id.*, 38:23-39:2.) | 40. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 40 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 41. The humidity to Dennis Dickison was miserable and hard to deal with. (Exhibit 9, Dickison Depo., 55:1-16.) | 41. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). This fact may be relevant to Plaintiff's claim under the FELA. Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 41 is undisputed. |
| 42. "On a sunny day, the rail temperature will be approximately 30 degrees Fahrenheit higher than the ambient temperature. An ambient temperature of 80 degrees Fahrenheit on a sunny day generally correlates to a rail temperature of approximately 110 degrees Fahrenheit." (Exhibit 18 to Steely Depo., Relationship between Ambient Temperature and Rail Temperature, Rule 7.3.3, Union Pacific Railroad Engineering Track Maintenance Field Manual, revised October 1, 2007.) | 42. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). This fact may be relevant to Plaintiff's claim under the FELA. Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 42 is undisputed. |
| 43. When using the Heat Index, combine the temperature with the relative humidity to obtain the "feel like" temperature (Heat Index). "Add up to 15° if in the direct sun." (Exhibit 20 to Steely Depo., Heat Index.) | 43. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). This fact may be relevant to Plaintiff's claim under the FELA. Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 43 is undisputed. |
| 44. At a Heat Index of 103 or higher, "Heatstroke/sunstroke highly likely with continued exposure." (*Id*.) | 44. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). This fact may be relevant to Plaintiff's claim under the FELA. Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 44 is undisputed. |
| 45. When factoring in the rail temperature and the fact that at 10:52 a.m. and thereafter the skies were clear (sunny), the Heat Index at 10:52 a.m. was 129° F; at 11:52 a.m. it was 135° F; at 12:52 p.m. it was 135° F; and at 1:52 p.m. it was 136° F. (See Exhibit 123 and Exhibit 15, Verification of Sullivan P. Brown, Weather or Not.) | 45. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). This fact may be relevant to Plaintiff's claim under the FELA. Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 45 is undisputed |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 46. At about 10:30 a.m., Plaintiff started feeling faint. Plaintiff sat in a mechanic's truck to cool off for about half an hour or so. (Exhibit 8, Plaintiff Depo., 61:1-19; 69:22-25.) | 46. For the purposes of this Response, Plaintiff's material fact number 46 is undisputed. |
| 47. Plaintiff informed Assistant Foreman Scott Nicholson that he wasn't feeling good and needed a break. Assistant Foreman Scott Nicholson advised Gang Safety Captain Bobby Steely of this. (**Exhibit 16**, Steely Depo., 36:2-23.) | 47. For the purposes of this Response, Plaintiff's material fact number 47 is undisputed. |
| 48. Mr. Nicholson was aware of the fact that Plaintiff was feeling dizzy, weak, and having trouble breathing, and that he was in the mechanic's truck for about half an hour or so to cool down. (Exhibit 7, Nicholson Depo., 44:4-10.) | 48. For the purposes of this Response, Plaintiff's material fact number 48 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 49. Around 11:00 a.m., while Plaintiff was sitting in the mechanic's truck, Assistant Foreman Scott Nicholson told him, "If you plan on being in the truck all day, you won't get paid." (Exhibit 8, Plaintiff Depo., 70:1-11.) | 49. Disputed.  Assistant Foreman Nicholson gave the following testimony about the conversation:<br><br>Q Did you say to Mr. Herrera while he was sitting in the mechanic's truck if you plan on being in the truck all day, you won't get paid?<br><br>A Absolutely not.  Absolutely not.  No.  I did not.  And where I want to go with that, as far as how I look at that, that has definitely been a miscommunication.  I was saying why -- you know, all I said was is it's not -- if you are feeling sick at all, it's better that you recover from it, you know, if you have to go back for a day to the hotel room, instead of missing a whole week's worth of work, but at no point did I say -- hence, he was there the whole day getting paid for any breaks that he needed that we did take officially. So to answer your question, no, but I can see why -- how that got turned around, but no, it's -- I never -- I never said anything – I'm not the railroad.  I'm an employee of the railroad.<br><br>(Union Pacific **Exhibit D**, Deposition of Scott Nicholson 49:18 -50:15.) |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 50. Braden Bradley, the mechanic in whose truck Plaintiff was sitting, recalls Assistant Foreman Scott Nicholson saying to Plaintiff that if he did not get back to work, he would not get paid that day. (Exhibit 17, Bradley Depo., 12:11-21.) | 50. Disputed.  Mr. Bradley actually testified that he was not quite sure quite sure exactly what Mr. Nicholson with respect to Plaintiff getting paid if did not return to work:

Q  And when he said -- or if you needed to call somebody, do you have any sense of -- were you able to hear that  conversation?

A  I only heard Scott's part of it.  Because I was up on  the machines, and he -- he was kind of stern when he asked.   Because I don't know what Guillermo was doing.  I don't -- I  didn't hear none of that so...

Q   Okay.   And when Scott -- did Scott Nicholson come up to the window -- the door of the car -- of the cab -- of the  truck?

A  He opened the door of the truck, yes.

Q All right.  And what did he ask Mr. Herrera?

A  Just if he was going to come back to work or if he needed to  call somebody to take his place.

Q  Okay.  And did he say anything about if he didn't get  back to work what would happen?

A  I -- I'm not 100 percent, but I think he said that he  wasn't going to get paid that day.  So, that's kind of one of  those I can and cannot remember.   You know, some of that I can remember.  I can remember when he said if he needed to -- was  going to get back to work or if he was going to call some -- call  somebody to replace him so he could work.  Because he said it in  kind of a stern voice.

(Union Pacific **Exhibit E**, Deposition of  Braden Bradley 12:4 to 13:1.) |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 51. Plaintiff got out of the truck because he felt like Assistant Foreman Scott Nicholson was forcing him to get out. (Exhibit 8, Plaintiff Depo., 70:7-9.) | 51. Disputed.  Plaintiff  decided on his own to leave Mr. Bradley vehicle:<br>Q.  You said that Mr. Herrera said to you, oh, hey, I can -- I can get out?<br>A  Yeah.<br>Q  Or something to that effect?<br>A  Yeah, because he was sitting there and I -- he's like, oh, I can get out.  He's like -- I said, no, you can sit in here  as long as you want.  It's -- you know, it's what it's here for.<br><br>(Union Pacific **Exhibit E**, Deposition of  Braden Bradley 21:18 to 21:25.)<br><br>\*\*\*<br>Q  So, is it -- is it -- is that your understanding or impression, at least, of what Mr. Nicholson is doing is trying to figure out, does Guillermo Herrera, does he want to come back to work or does he not want to come back to work so Mr. Nicholson can figure out, do I need to call someone else to replace him?<br>A  Yes.<br>Q  Is that fair?<br>A  Yeah, that's fair.<br><br> (Union Pacific **Exhibit E**, Deposition of Braden Bradley 25:1 to 25:8.)<br>\*\*\*<br>Q  Sure.  At least based on your interaction with Mr. Nicholson in the past and your impression of him, did you have any reason to believe that if Guillermo Herrera wanted medical attention or didn't want to go back to work  that Mr. Nicholson  wouldn't  have complied with that request?<br>A  No.  He would have complied with it and called up     his -- his supervisor to try to get somebody back there to run the machine so they could keep moving.<br><br>(Union Pacific **Exhibit E**, Deposition of  Braden Bradley 25:17 to 25:24.) |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 52. After this conversation, Plaintiff returned to work. (Exhibit 10, Newman Depo., 45:4-24.) | 52. For the purposes of this Response, Plaintiff's material fact number 52 is undisputed. |
| 53. About 11:30 to 12:00 noon, Plaintiff sat in another truck, this time a fuel truck, to cool down. (Exhibit 8, Plaintiff Depo., 71:5-25.) | 53. For the purposes of this Response, Plaintiff's material fact number 53 is undisputed. |
| 54. Plaintiff and Dennis Dickison sat in the fuel truck for about 15 minutes. (Exhibit 9, Dickison Depo., 44:19-45:13.) | 54. For the purposes of this Response, Plaintiff's material fact number 54 is undisputed. |
| 55. Assistant Foreman Scott Nicholson told Plaintiff and Dennis Dickison to get out of the truck. Plaintiff got out of the truck and continued working. (Exhibit 8, Plaintiff Depo., 72:8-10.) | 55. Disputed.  Mr. Dickison did testified differently: <br><br>A.   And then after lunch, we had worked on a ways further.  And the fuel truck came through to fuel the machines.  So we stopped and took a break. And Guillermo and I sat in the fuel truck, in the air conditioning, while they fueled it.  And we took a break for about 15 minutes. Then we went back to work. <br><br>(Union Pacific **Exhibit B**, Deposition of Dennis Dickison 44:19 - 45:1.) <br><br>*** <br><br> Q.  And did you feel some pressure from Mr. Nicholson to get back to work? <br><br>A.  No.  We just -- we knew if we needed to stop, we were supposed to stop.  That's what they told us in briefing.  And no matter what he said, if we felt we needed a break, we were supposed to take a break. <br><br>(Union Pacific **Exhibit B**, Deposition of Dennis Dickison 51:1 to 51:8.) |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 56. At approximately 1:00 p.m., Plaintiff told coworker Logan Newman that he didn't feel good; he couldn't walk anymore because his vision was looking real blurry; that he didn't feel good, and had to stop and sit down. (Exhibit 8, Plaintiff Depo., 72:16-22.) (Exhibit 3 to Plaintiff Depo., handwritten statement of Plaintiff.) | 56. Disputed.  In Plaintiff's sworn testimony he did not provide a time that this incident occurred:<br><br>A.  That's -- Scott left, he moved -- moved up my machine pretty far.  And I was telling Logan I didn't feel good, and I told him several times and he -- I remember him telling me to be careful because I almost fell.  And I couldn't walk any more because I -- my vision was looking real blurry.  So I went and sat on the machine, Dennis's machine. And I actually fell and Logan caught me and he kept kept me up.  And Dennis called on -- on the radio, saying that what had happened.  And I know Logan, and I'm not sure if Dennis or if Scott carried me to the truck --to a van.<br><br>(Union Pacific **Exhibit F**, Deposition of Guillermo Herrera 72:17 to 73:3.)<br><br>Additionally, Mr. Nicholson provided a different timeline of events:<br><br>Q  Mr. Herrera thinks it's about 1 or 1:30.<br><br>A  No.<br><br>Q  Do you have any way to dispute that?<br><br>A   No, there's no way it was 1:30.  I could actually, if you give some time to do some research, it wasn't 1 or 1:30 that he left.  No way. There was a -- a fuel truck that came through around 2 something.  It's my job to document what goes on during the day.  That's how I remember.  And the -- the fuel truck came through between 2 and 3, and he sat in that truck, too, for about 15, 20 minutes, maybe longer.  1 or1:30, that's just not going to add up at all.<br><br>(Union Pacific **Exhibit D**, Deposition of Scott Nicholson 53:1 to 53:13.) |

18

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 57. Plaintiff then went and sat on a track machine on the gang. (Exhibit 8, Plaintiff Depo., 72:16-22.) | 57. Disputed. Plaintiff did not testify as represented. See Union Pacific's response to ¶ 57 *supra*. |
| 58. Plaintiff told Dennis Dickison that he had diarrhea and felt like he was going to throw up. (Exhibit 58 to Dickison Depo., Dickison Statement.) | 58. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 58 is undisputed. |
| 59. When Mr. Dickison and Mr. Logan offered to help him, Plaintiff said that he could not walk. (Exhibit 9, Dickison Depo., 45:14-47:11.) Plaintiff actually fell and Logan (Newman) caught him. (Exhibit 8, Plaintiff Depo., 72:24-25.) | 59. Disputed. Mr. Dickison did not testify in his deposition pages cited that Plaintiff actually fell. (*See* **Exhibit B**, Dickison Depo., 45:14-47:11.) |
| 60. Mr. Dickison radioed Assistant Foreman Scott Nicholson to tell him that Guillermo (Plaintiff) was sick, that he needed to call someone because Plaintiff needed help. (Exhibit 9, Dickison Depo., 47:1-19.) | 60. For the purposes of this Response, Plaintiff's material fact number 60 is undisputed. |
| 61. Logan Newman observed Plaintiff's physical and mental condition. Mr. Newman said, "He seemed a little out of it. You know, when he told me that he couldn't get up, I knew that it was serious." "And when he told me he couldn't get up I knew it was a big deal." "I called Scott as soon as he (Plaintiff) told me he couldn't get up." (Exhibit 10, Newman Depo., 48:3-15.) | 61. For the purposes of this Response, Plaintiff's material fact number 61 is undisputed. |
| 62. Assistant Foreman Scott Nicholson called Surfacing Gang Foreman Robert "Bobby" Herrera on the radio, asking him to come and pick up Plaintiff in his vehicle. Mr. Herrera arrived within a couple of minutes of my transmission on the radio. (Exhibit 7, Nicholson Depo., 58:23-25.) | 62. For the purposes of this Response, Plaintiff's material fact number 62 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 63. Scott Nicholson and Logan Newman assisted Plaintiff to Bobby Herrera's van because he could not walk by himself. His legs kind of shuffled but he could not support himself. Mr. Newman stayed with Plaintiff the entire time until he left with Bobby Herrera. Because of Plaintiff's condition, Mr. Newman assumed that Bobby Herrera was taking him to the hospital at that time because he was not coherent and needed medical help. (Exhibit 10, Newman Depo., 49:5-50:1.) | 63. Disputed.  Mr. Nicholson testified that Plaintiff could still walk at the time he got in Mr. Bobby Herrera's Van:<br><br>A  It was custom -- It was -- It was special to that circumstance that he appeared like he was still okay.  He was not on the ground.  He was not -- You know, his shoulders were down, but he wasn't like passed out or anything.   He wasn't like – He could still walk.  He walked himself to the van. It wasn't -- It wasn't a situation where he alarmed everybody.  He still was just very -- He just looked tired.  That's it, you know.  And so within two minutes he was gone. I mean, it was -- so we're talking about decision making within that two minutes, you know what I mean.  If he'd have been there just a little bit longer, I probably would have called an ambulance.<br><br>(Union Pacific **Exhibit D**, Deposition of Scott Nicholson 95:13-96:2.) |
| 64. Surfacing Gang Foreman Bobby Herrera left with Plaintiff in his van; his concern was to get Plaintiff to the job (briefing) site, maybe to the doctor's office. Whatever. (Exhibit 19, R. Herrera Depo., 27:19-22.) | 64. For the purposes of this Response, Plaintiff's material fact number 64 is undisputed. |
| 65. Dennis Dickison assumed that Bobby Herrera would be taking Plaintiff to the hospital. (Exhibit 9, Dickison Depo., 49:12-23.) (Exhibit 58 to Dickison Depo., Statement of Dennis Dickison dated February 1, 2016.) | 65. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).   Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 65 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 66. Plaintiff is under the impression that Bobby Herrera is taking him to the hospital. (Exhibit 8, Plaintiff Depo., 74:5-8.) | 66. Disputed.  Bobby Herrera asked Plaintiff if he wanted to go to the hospital and Plaintiff refused: <br><br> I asked him, "Do you need any water?"  I said, "Are you comfortable?"   And I put the seat belt on for him.  I asked him, "Are you on any medication?"  I said -- I asked him the last time he had ate.  You know?  And he responded. And I said, "Do you need to go to the doctor?" And he said, "No, I just need a break."  He says, "I want to go to the motel." <br><br> (Union Pacific **Exhibit G**, Deposition of Robert Herrera 29:2-29:10.) |
| 67. In the Job Briefing form for UPRR Steel Gang 8501 ("Job Briefing 8501 Work Group") (see Exhibit 4, referenced in Turner Depo.), in the Emergency Response Plan ("E.R.P.") is designated the nearest hospital and directions to that hospital. In Exhibit 4, it is designated: "Hospital:" with directions to the Onaga Community Hospital7, 120 W. 8th St., Onaga, Kansas, 66521. The hospital and location is included on the Job Briefing form (Exhibit 4): "In case of emergencies. In case of emergencies, everyone knows the location of the nearest hospital." (Exhibit 6, Turner Depo., 23:6-21.) | 67. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).  Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 67 is undisputed. |
| 68. Robert Herrera called Mr. Diaz "[a]bout 1:45, maybe 1:30." (Exhibit 19, R. Herrera Depo., 31:25-32:2.) | 68.  Disputed in part.  Mr. Nicholson provides a different timeline of events.  See Union Pacific's response to Plaintiff's  Statement of Material Fact ¶ 56 supra. |
| 69. Charlie (Carlos) Diaz told Robert Herrera to meet him at a gas station in Emmett, Kansas. (*Id*., 32:21-32:22.) | 69. For the purposes of this Response, Plaintiff's material fact number 69 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 70. Surfacing Gang Foreman Robert Herrera drove to the gas station/store in Emmett, which was about three and a half miles from the siding where the gang was working. (*Id.*, 29:14-15.) | 70. For the purposes of this Response, Plaintiff's material fact number 70 is undisputed. |
| 71. Robert Herrera and Plaintiff waited at the gas station/store in Emmett until Mr. Diaz arrived in his truck. They waited about five minutes. (Id., 32:23 | 71. For the purposes of this Response, Plaintiff's material fact number 71 is undisputed. |
| 72. When Mr. Diaz arrived in his truck, Robert Herrera and Carlos Diaz had to assist Plaintiff to Carlos Diaz's truck, put him in the front seat, and help him with the seat belt. (*Id.*, 35:2-10.) | 72. For the purposes of this Response, Plaintiff's material fact number 72 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 73. While Plaintiff was in Mr. Diaz's truck, he was in and out of consciousness. (Exhibit 8, Plaintiff Depo., 74:12-14.) | 73. Disputed.  Mr. Diaz testified that if Plaintiff had not been alert or attentive he would have made the decision to take him to the hospital:<br><br>Q  If you have a concern that the individual is confused or doesn't appear as though they are able to appropriately evaluate themselves, and you know, be conscious and alert and aware, are you in that scenario, going to make the decision for them and take them to the hospital?<br><br>A  Yes, I would take them if I saw that, yes.<br>Q  At any time, did Mr. Herrera indicate to you or give you a concern that he was somehow unable to -- inadequate to accurately assess his own condition and tell you when he wanted to go to the hospital?<br><br>A  No, because I asked them, "If you needed to go, would you let me know?"  He said he would.  First he said, "No, no, I don't need to go."  And then at 4:30, he said, "Can you take me?"  I said, "For sure, I will take you."<br><br>(Union Pacific **Exhibit H**, Deposition of Carlos Diaz 54:1--54:22) |
| 74. While Plaintiff was in Mr. Diaz's truck, Mr. Diaz was not listening to Plaintiff when he was telling him to take him to the hospital. (*Id*., 53:11-23.) | 74. Disputed.  See Response immediately above in ¶ 73. |
| 75. Eventually, Mr. Diaz drove Plaintiff in his truck to the Union Pacific job briefing site in Onaga, Kansas, not the hospital. (*Id*., 74:20-21.) | 75. For the purposes of this Response, Plaintiff's material fact number 75 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 76. Plaintiff was at the job briefing site with Carlos Diaz and Bobby Steely "[n]o more than 20 minutes." (Exhibit 16, Steely Depo., 49:10-14.) | 76. For the purposes of this Response, Plaintiff's material fact number 76 is undisputed. |
| 77. Plaintiff told Bobby Steely, "I think I need to go to the hospital." Bobby Steely said, "Alright. Charley (a/k/a Carlos), let's go." (*Id.*, 48:12-20.) | 77. For the purposes of this Response, Plaintiff's material fact number 77 is undisputed. |
| 78. Mr. Steely jumped in the back seat and we drove straight to the Onaga emergency room (*Id.*, 48:19-20), which is only about one minute away from the job briefing site in Onaga. (*Id.* 49:25-50:02.) | 78. For the purposes of this Response, Plaintiff's material fact number 78 is undisputed. |
| 79. Bobby Steely helped Plaintiff into a wheelchair, and the emergency room personnel took Plaintiff right back in, took Plaintiff back to a room and got him on a table at Community HealthCare System. (*Id.*, 51:8-21.) | 79. For the purposes of this Response, Plaintiff's material fact number 79 is undisputed. |
| 80. Plaintiff arrived at the emergency room at Community HealthCare System, Onaga, Kansas, at 4:28 p.m. His chief complaint was heat exhaustion, dizzy, weak, confused. His neurological assessment revealed: "Level of consciousness: cooperative and lethargic. Orientation: Oriented to person. Not oriented to place. Not oriented to time. Unable to orient purpose. Speech is slow. Patient is lethargic." "Patient is confused. Patient obeys commands. Tingling noted. Patient reports headache, and vertigo." Cardiovascular assessment reveals sinus tachycardia. The assessment in the emergency room is (1) heat exhaustion, (2) hypokalemia secondary to above, (3) weakness secondary to above. (Exhibit 92 to Dr. Diaz Depo., Community HealthCare System records.) | 80. For the purposes of this Response, Plaintiff's material fact number 80 is undisputed. |

24

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 81. Plaintiff was discharged from the emergency room at Community HealthCare System, Onaga, Kansas, at 9:52 p.m. His condition on discharge was "fair." (*Id.*, Page 3 of 37.) | 81. For the purposes of this Response, Plaintiff's material fact number 81 is undisputed. |
| 82. Union Pacific Railroad Steel Gang 8501 was working in Cook Siding, Kansas, at Mile Post 92. (Exhibit 2 to Plaintiff Depo., Report of Personal Injury.) | 82. For the purposes of this Response, Plaintiff's material fact number 82 is undisputed. |
| 83. It is 4.8 miles on paved, county roads from the road crossing at Cook Siding to the gas station/store in Emmett, Kansas, where Robert Herrera drove Plaintiff to meet Carlos Diaz. It is a 9-minute drive. (Exhibit 153, screen shot of travel from UPRR Structure in Emmett, Kansas, to gas station in Onaga, Kansas.) | 83. Disputed. Plaintiff does not support this statement with evidence meeting the requisite foundational requirements to be considered by the Court. |
| 84. It is 18 miles on Kansas Highway 63 and Highway 16 from the gas station/store in Emmett, Kansas to Community HealthCare System in Onaga, Kansas. It is a 21-minute drive. (Exhibit 154, screen shot of travel from gas station in Emmett, Kansas to Community HealthCare System in Onaga, Kansas.) 85. Robert Herrera called Carlos Diaz at 1:30-1:45 p.m. It takes 9 minutes to drive from the crossing to the gas station/store in Emmett. Mr. Herrera would have arrived with Plaintiff in his van at 1:54. Robert Herrera and Plaintiff waited at the gas station/store for about 5 minutes until Mr. Diaz came in his truck, until 1:59 p.m. Robert Herrera estimates that it was probably about 30 minutes from when he picked up Plaintiff at the job site to when he got him help to Mr. Diaz (1:30-1:45 to 2:00-2:15 p.m.). (Exhibit 19, R. Herrera Depo., 34:5-16.) | 84. Disputed. Plaintiff does not support this statement with evidence meeting the requisite foundational requirements to be considered by the Court. Furthermore, this paragraph is unsupported speculative argument stating Plaintiff's theory of the case. Union Pacific introduced contrary evidence in response to Plaintiff's timeline claims, herein. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 85. Robert Herrera called Carlos Diaz at 1:30-1:45 p.m. It takes 9 minutes to drive from the crossing to the gas station/store in Emmett. Mr. Herrera would have arrived with Plaintiff in his van at 1:54. Robert Herrera and Plaintiff waited at the gas station/store for about 5 minutes until Mr. Diaz came in his truck, until 1:59 p.m. Robert Herrera estimates that it was probably about 30 minutes from when he picked up Plaintiff at the job site to when he got him help to Mr. Diaz (1:30-1:45 to 2:00-2:15 p.m.). (Exhibit 19, R. Herrera Depo., 34:5-16.) | 85. Disputed in Part.  The sentences "It takes 9 minutes to drive from the crossing to the gas station/store in Emmett. Mr. Herrera would have arrived with Plaintiff in his van at 1:54. Robert Herrera and Plaintiff waited at the gas station/store for about 5 minutes until Mr. Diaz came in his truck, until 1:59 p.m."  are not properly supported by evidence that has proper citation in the record.   A review of Robert Herrera's deposition at the lines referenced in Plaintiff's Statement of Undisputed Material Facts contain none of the representations made by Plaintiff in paragraph 85 except the reference to 30 minutes:

A  I parked the van in the shade.

Q  He is still in the van?

A  Yes, sir.

Q  All right. What happened next?

A   When Charley showed up there, me and Charley would assist him out of the -- my van, put him in his truck.  And then after that, they made  their way towards the office there.  We have a cooling station up there.   And they headed up that way.  And by the time I got him help to Charley there, it was probably about 30 minutes.

(*See* **Exhibit G**, R. Herrera Depo., 34:5-16.) |
| 86. Plaintiff was assisted into Mr. Diaz's company-issued pickup truck between 2:00 p.m. and 2:15 p.m., in Emmett, Kansas (*Id.*, 35:2-10.) | 86. Disputed.  Plaintiff  does not support this statement with evidence meeting the requisite foundational requirements to be considered by the Court.   Furthermore,  this  paragraph  is unsupported   speculative   argument   stating Plaintiff's theory of the case.  Finally, Union Pacific introduced evidence in response to Plaintiff's timeline claims, herein. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 87. Plaintiff was not admitted to the emergency room at Community HealthCare System in Onaga, Kansas until 4:28 p.m. (Exhibit 92 to Dr. Diaz Depo., Community HealthCare System records.) | 87. For the purposes of this Response, Plaintiff's material fact number 87 is undisputed. |
| 88. Neither Mr. Diaz nor the Union Pacific Railroad has come forward with any explanation as to why it took Mr. Diaz over two hours to get Plaintiff to a hospital that was only 22.8 miles away. | 88. Disputed. Plaintiff does not support this statement with evidence meeting the requisite foundational requirements to be considered by the Court. Furthermore, this paragraph is unsupported speculative argument stating Plaintiff's theory of the case. Finally, Union Pacific introduced evidence in response to Plaintiff's timeline claims, herein. |
| 89. John J. Wyker is an expert retained by the Union Pacific Railroad to "testify regarding the Rail Safety Act." (Exhibit 21, Defendant's Third Supplemental Expert Witness Disclosure.) (Exhibit 132, Appendix A, curriculum vitae of John J. Wyker.) | 89. For the purposes of this Response, Plaintiff's material fact number 89 is undisputed. |
| 90. Mr. Wyker agrees that Mr. Robert Herrera called Mr. Carlos Diaz somewhere between 1:30 and 1:45. (Exhibit 22, Wyker Depo., 49:12-18.) | 90. Dispute. Mr. Wyker simply agreed that Mr. Robert Herrera testified that he called Mr. Carlos Diaz somewhere between 1:30 and 1:45. |
| 91. It is Mr. Wyker's understanding that Mr. Robert Herrera took Plaintiff right away over to Emmett, to Mr. Diaz, from Cook Siding, which was three or four miles from Emmett, and would have taken 10 or 15 minutes to get there. He agrees that it would have been about 2:00 that Plaintiff would have been put into Carlos Diaz's UP pickup truck. (*Id.*, 49:21-50:14.) | 91. Disputed. Furthermore, this paragraph is unsupported speculative argument stating Plaintiff's theory of the case. Finally, Union Pacific introduced evidence in response to Plaintiff's timeline claims, herein. |
| 92. The Community HealthCare System records document that Plaintiff was admitted at 16:36 (4:36 p.m. civilian time). Mr. Wyker agrees (after lengthy debate) that if Plaintiff were admitted to the hospital at 4:30, there would be "some delay in there." (*Id.*, 68:6-9.) | 92. Disputed. Furthermore, this paragraph is an unsupported speculative argument stating Plaintiff's theory of the case. Finally, Union Pacific introduced evidence in response to Plaintiff's timeline claims, herein. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 93. Mr. Wyker clarifies that the first sentence in 20109(c)(1) prohibits the Union Pacific Railroad from denying, delaying, or interfering with medical treatment; that it makes that prohibition. (*Id.*, 20:1-7.) | 93. Disputed. Union Pacific objected to this question as improper under Fed. R. Evid. 702. Plaintiff was asking Mr. Wyker to interpret a statute. |
| 94. Mr. Wyker agrees that the language in sentence one in Paragraph 1 of 20109(c) does not mean anything different than the straightforward statutory language contained in the sentence; i.e., "I think the statute – the statute language speaks for itself." (*Id.* 18:12-16.) | 94. Disputed. Union Pacific objected to this question as improper under Fed. R. Evid. 702. Plaintiff was asking Mr. Wyker to interpret a statute. |
| 95. Mr. Wyker agrees that the first sentence in 20109(c)(1) prohibits the Union Pacific Railroad from denying, delaying, or interfering with medical treatment. He agrees that the second sentence imposes an affirmative duty on the Union Pacific Railroad that if transportation to a hospital is requested by an employee, the railroad shall promptly arrange to have the injured employee transported to the nearest hospital. He agrees that the first sentence is a prohibition, the second sentence imposes on the railroad an affirmative duty. (*Id.*, 20:2-19.) | 95. Disputed. Union Pacific objected to this question as improper under Fed. R. Evid. 702. Plaintiff was asking Mr. Wyker to interpret a statute. |
| 96. 49 C.F.R. § 225.33 requires the Union Pacific Railroad to have an Internal Control Plan. (*Id.*, 25:1-6.) | 96. Objection. This paragraph is not a statement of material fact. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 97. 49 C.F.R. § 225.33, Internal Control Plans, (a), states:<br>"Each railroad shall adopt and comply with a written Internal Control Plan that shall be maintained at the office where the railroad's reporting officer conducts his or her official business. … The Internal Control Plan shall be designed to maintain absolute accuracy and shall include, at a minimum, each of the following components: (1) A policy statement declaring the railroad's commitment to complete and accurate reporting of all …injuries, …arising from the operation of the railroad, to full compliance with the letter and spirit of FRA's accident reporting regulations, and to the principle, in absolute terms, that harassment or intimidation of any person that is calculated to discourage or prevent such person from receiving proper medical treatment…will result in some stated disciplinary action against any…supervisor,…committing such harassment or intimidation." | 97.  Objection. This paragraph is not a statement of material fact. |
| 98. 49 C.F.R. § 225.33 is a regulation promulgated by the FRA for the protection of railroad employees. (*Id.*, 29:4-13.) | 98.  Objection. This paragraph is not a statement of material fact. |
| 99. The Internal Control Plan published by the Union Pacific Railroad and last revised May 18, 2015, states that the UP will not tolerate harassment or intimidation of any person that is calculated to discourage or prevent such person from receiving proper medical treatment. (*Id.*, 28:19-29:3.) | 99. Objection. This paragraph is not a statement of material fact. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 100. George Gavalla is Plaintiff's retained expert regarding the Railroad Industry Standard of Care and the Union Pacific's own Safety Policies, Rules and Procedures regarding treatment of railroad workers who report or exhibit signs of injury or illness. (See Exhibit 58-18 at P. 18, Gavalla CV, Appendix A to Safety Analysis Report.) He was the Associate Administrator for Safety at the Federal Railroad Administration from 1997 to 2004. He reviewed, among other things, the Union Pacific policy regarding heat stress, including instructions to its supervisors and managers on how to monitor heat stress, signs of heat stress, and precautions to be taken when an employee is suffering signs of heat stress; depositions of Plaintiff's coworkers; deposition of Assistant Foreman Scott Nicholson; deposition of Robert Herrera; deposition of Carlos Diaz; deposition of Plaintiff. | 100.  Objection. This paragraph is not a statement of material fact. |
| 101. It is Mr. Gavalla's opinion that the Union Pacific Railroad did not follow either the industry standards or UP's own standards of care regarding the treatment of Plaintiff. (Exhibit 23, Gavalla Depo., 58:5-13.) | 101. Disputed. This paragraph is not a statement of material fact.  Furthermore, this type of expert testimony is not permissible.  See *Whitt v. Union Pac. R.R. Co.*, No. 8:12CV358, 2014 WL 3943135, at *4 (D. Neb. Aug. 12, 2014 (" [T]he Court finds that whether Union Pacific complied with its own policies is not the type of testimony that requires an expert.) |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 102. As it relates to the Union Pacific Railroad's own policy (Exhibit 13, Union Pacific Railroad Quality Safety Meeting Process, Heat Stress Prevention, Course Code – QS97), Mr. Gavalla's opinion is that at 1:30 in the afternoon on July 26, 2015, "it should have been clear to all the UP people on the scene and certainly was clear to the fellow employees that Mr. Herrera was suffering heat stress of some type and definitely should have been taken for medical examination by that time at 1:30." (Exhibit 23, Gavalla Depo., 73:18-74:17.) | 102. Disputed. This paragraph is not a statement of material fact, it is merely Mr. Gavalla's non-medical opinion. |
| 103. Mr. Gavalla testified that a delay from the time Mr. Guillermo Herrera was removed from the job site to the time he actually showed up at the emergency room is an interference, delay, and, at least for a period of time, denial of such medical treatment when it should have been obvious that Plaintiff was exhibiting signs that he could not perform his work, that he asked to be removed, and that clearly his supervisors observed him in a condition where he was not fit, all in violation of the standard of care embodied in 20109(c)(1). (*Id.*, 118:21-120:1.) | 103. Disputed. This paragraph is not a statement of material fact. Furthermore, this type of expert testimony is permissible. *See Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122 (D. Mont. 2016) ("Gavalla will not be permitted to testify as to whether BNSF violated any law or regulation in the instant case."); see also *Whitt v. Union Pac. R. R. Co.*, 2014 WL 3943135, *2 (D. Neb. Aug. 12, 2014) (The plaintiff brought a Federal Railroad Safety Act claim alleging the railroad delayed his access to medical care. The *Whitt* court permitted Mr. Gavalla's testimony generally as to the safety rules and safety regulations that railroads are required to implement. However, the court barred Mr. Gavalla from testifying "that certain behaviors violated the federal law." *Id.* at *4). |
| 104. James H. Diaz, M.D., MPH, Ph.D., FCCP, FCCM, FACOEM, FACMT, was retained by the Union Pacific Railroad to perform a "review and analysis of the heat stress incident, July 26, 2015." | 104. For the purposes of this Response, Plaintiff's material fact number 104 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 105. Dr. Diaz is a department head in Environmental and Occupational Health Sciences at the School of Public Health at LSU Health Sciences Center in New Orleans. He has appointments in the School of Medicine in the Departments of Anesthesiology and Internal Medicine as an occupational medicine physician and anesthesiologist. (Exhibit 24, Dr. Diaz Depo., 5:1-22.) | 105. For the purposes of this Response, Plaintiff's material fact number 105 is undisputed. |
| 106. It is Dr. Diaz's understanding that the Union Pacific Railroad selected him to be an expert in this case because he is a consultant to the Union Pacific Railroad. (*Id.*, 7:14-18.) | 106. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's ¶ number 106 is undisputed. |
| 107. After a lengthy discussion of the removal of the plaintiff from the job site, the time and distance from the job site to the hospital in Onaga, Dr. Diaz states, "It seems to me he (Carlos Diaz) could have gotten him (Plaintiff) there (to the hospital) quicker." (*Id.*, 125:17-126:15.) | 107. This paragraph is an unsupported and speculative argument stating Plaintiff's theory of the case based on Plaintiff's desired interpretation of the timeline. Union Pacific introduced contrary evidence in response to Plaintiff's timeline claims, herein. |
| 108. Exhibit 54 is the Union Pacific Railroad's "OSHA Whistleblower Policy & Policy Directive" identified by Brain Rowe in his deposition. (See also Exhibit 29 to Mr. Rolow's deposition.) (Exhibit 25, Rowe Depo., 56:9-23.) | 108. For the purposes of this Response, Plaintiff's material fact number 108 is undisputed. |
| 109. Exhibit 54 states under "Purpose": "Union Pacific is strongly committed to complying with the Rail Safety Act of 2008, 49 U.S.C. § 20109, also known as the Whistleblower Statute." | 109. For the purposes of this Response, Plaintiff's material fact number 109 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 110. On Page 2 of the document, the Union Pacific Railroad sets forth its policy and directive regarding an employee with a work-related injury: "When an employee reports a work-related personal injury or illness, Union Pacific's expectations include, but are not limited to, the following: "1. Ensure the employee receives necessary medical attention, without delay. The document also states: "Do not interfere in any way with an employee's medical treatment whether related to an on- or off-duty injury or illness." | 110. For the purposes of this Response, Plaintiff's material fact number 110 is undisputed. |
| 111. Mr. Rowe confirms that "…if it's obvious that a person is – let's say they're injured, and it's obvious they have a very serious injury, for example a broken bone, you know, some kind of bad injury, call 911 and get them to the hospital. I mean, there's no question, even if the employee can't tell you he needs to go to the hospital." (Exhibit 25, Rowe Depo., 95:20-96:2.) | 111. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).  Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 111 is undisputed. |
| 112. Mr. Rowe confirms that the words "deny, delay, or interfere" speak for themselves. (*Id.*, 86:18-25.) | 112. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).  Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 112  is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 113. A Memo to All Operating Department Management Employees from Lance Fritz, dated February 28, 2013 (Exhibit 52 to Rowe Depo.), states:<br><br>"The FRA reporting regulations and the FRA's interpretation and application of these regulations specify how managers must handle on-duty employee personal injury cases and medical treatment. To ensure compliance I am providing some basic procedural guidelines below:<br><br>(1) When an employee is injured, the first priority is to ensure that the employee receives the necessary medical attention, without delay. | 113. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 113 is undisputed. |
| 114. Mr. Diaz had received training on the Leader's Guide to Preventing Illnesses Due to Heat Stress dated May 2014: "This information is provided to assist supervisors in refocusing our safety efforts" (Exhibit 13 to Linford Depo., Union Pacific Railroad Quality Safety Meeting Process, Heat Stress Prevention, Course Code – QS97), after which he should have been able to recognize the different types of heat stress and their signs and symptoms, and "[i]f the heat stress appears to be more severe, don't hesitate in seeking medical attention" (*Id.*, at p. 8). | 114. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). It is merely Mr. Cox's opinion and argument. |
| 115. He also should have been aware of the symptoms and signs of heat exhaustion, including headache, dizziness, weakness, and flushing of the skin, and the action to take if these symptoms occur, i.e., get person in the shade, start cooling, give fluids; seek medical attention if symptoms do not improve in 15 to 20 minutes. | 115. Objection, this paragraph fails to comply with local rule 56.1: no citation to the record. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). It is merely Mr. Cox's opinion and argument. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 116. He also should have been aware of the symptoms and signs of heat stroke, including confusion, decrease in consciousness, nausea, vomiting (*Id.*, at p. 8). | 116. Objection, this paragraph fails to comply with local rule 56.1: no citation to the record. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). It is merely Mr. Cox's opinion and argument. |
| 117. He should have known the action to take if this (heat stroke) occurs; that it is a medical emergency, call 911, or immediately transport to an emergency room (*Id.*, at p. 8). | 117. Objection, this paragraph fails to comply with local rule 56.1: no citation to the record. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). It is merely Mr. Cox's opinion and argument. |
| 118. Mr. Diaz received this training four months before July 26, 2015, the date of Plaintiff's injury. (See Exhibit 64, Complete Training History for Carlos Diaz, at Bates UP Herrera 0602, 03/19/2015, marked at deposition of Louis Martinez). | 118. Objection, this paragraph fails to comply with local rule 56.1: no citation to the record. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1). Nevertheless, for the purposes of this Motion, Plaintiff's ¶ number 118 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 119. On July 26, 2015, from 14:21 (after Plaintiff was in his truck) to 16:28 (when Plaintiff was admitted to the emergency room), Mr. Diaz made 14 calls on his cell phone, and received 5 calls on his cell phone:<br><br>a. According to information provided by Defendant in discovery, Carlos Diaz's cell phone number is (480) -5369.<br><br>b. He was on his cell phone a total of 74 minutes during this period of time.<br><br>c. One call was to his wife at 14:27 for 3 minutes. (Mrs. Diaz's number is (480) -2822.)<br><br>d. One of the calls was to Mr. Diaz's mother at 14:36, for 30 minutes. (Mr. Diaz's mother's phone number is (520) -2521.)<br><br>e. One phone call was to Assistant Foreman Scott Nicholson at 15:18, for 3 minutes. Two calls were from Assistant Foreman Scott Nicholson, 16:14 for 4 minutes, and 16:18 for 1 minute. (See Exhibit 26, Defendant's Supplemental Responses and Objections to Plaintiff's First Request for Production of Documents, Supplemental Response to Request No. 3; and "Carlos Diaz Cell Phone" documents provided therewith and Bates stamped UP Herrera 00578-00582.) | 119. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).   Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 119 is undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 120. Union Pacific Rules for its Maintenance of Way Department, effective November 17, 2008 with updates as of October 1, 2014, 40.2 Chapter 2 Supplements, 2.21 Electronic Devices, states under "Cell Phones and Computers":<br><br>"2. Employees, while on-duty or on company property, must not use cell phones or computer while driving motor vehicles except as follows. Exception: when initiating or receiving cellular phone calls, drivers of company vehicles must utilize hands-free equipment. If hands-free equipment is not available, bring the vehicle safely to a stop until the call is completed."<br><br>(Exhibit 28.) | 120. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).  Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 120 is undisputed. |
| 121. Counsel for Plaintiff has not been provided information as to whether or not the company vehicle that Mr. Diaz was driving was equipped with hands-free equipment. If it did not, Mr. Diaz was required to bring the vehicle to a stop until the call was completed. In any event, during the more-than-two-hour period of time that Plaintiff was in the condition he was in and in Mr. Diaz's company truck, Mr. Diaz was on his phone 75 minutes. (Exhibit 27, Defendant's Answers and Objections to Plaintiff's Sixth Set of Interrogatories, Interrogatory No. 30.) | 121. This paragraph does not contain a fact that is critical to proving Plaintiff's claim under 49 U.S.C. § 20109(c)(1).  Nevertheless, for the purposes of this Motion, Plaintiff's material fact number 121 is undisputed. |
| 122. Plaintiff is a natural born citizen of the United States, residing in El Paso, Texas. He continues on the employment roster as an employee of Defendant, Union Pacific Railroad, but in the status of "on a long term MLOA." (Exhibit 30, E-mail to counsel for Plaintiff from Justin Dietrich, 04/18/17.) | Undisputed. |

| Plaintiff's Statement of Undisputed Material Facts | Union Pacific's Response And Opposition To Plaintiff's Statement of Undisputed Material Facts and Additional Disputed Facts |
|---|---|
| 123. Defendant admits it is a corporation duly organized and existing under the laws of the State of Delaware and operates as a railroad carrier in the State of Nebraska and other states. (See Answer to Plaintiff's Amended Complaint (Doc. #44).) | Undisputed. |
| 124. Defendant does not contest jurisdiction or venue. (See Rule 26(f) Report, Doc. #10.) | Undisputed. |

### III.   UNION PACIFIC'S ADDITIONAL STATEMENT OF DISPUTED MATERIAL FACTS

In addition to the disputes of evidence Union Pacific set forth above, Union Pacific provides the following additional Statements of Disputed Material Facts.

1.   Immediately after Plaintiff asked to be taken to the hospital, Charley Diaz and Bobby Steeley took him to receive medical treatment at the closest medical facility:

Q   What happened next?

A   Well, just kept checking on him.  He was sitting in the truck with Charley, in the AC there.  And we just kept checking back with him.  I came over three, four times.  And then the last time I came over is when he said, "I think I need to go to the hospital."   And I said, "All right.   Charley, let's go."   I jumped in the back seat and we drove straight to the Onaga emergency room.

(Union Pacific **Exhibit I**, Deposition of Bobby Steeley 48:11 to 48:20.)

***

Q …At any time, did Mr. Herrera indicate to you or give you a concern that he was somehow unable to -- inadequate to accurately assess his own condition and tell you when he wanted to go to  the hospital?

A   No, because I asked them, "If you needed to go, would you let me know?"  He said he would.  First he said, "No, no, I don't need to go."  And then at 4:30, he said, "Can you take me?"  I said, "For sure, I will take you."

(Union Pacific **Exhibit H**, Deposition of Carlos Diaz 54:11-54:20.)

39

## IV.   SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment only if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are, by definition, facts that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute over a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, the non-moving party may defeat a motion for summary judgment by setting forth affirmative evidence and specific facts that demonstrate a genuine dispute on an issue. *Anderson*, 477 U.S. at 250.

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. Saint Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id*. The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011).

As will be discussed more fully herein, the Court should deny Plaintiff's Motion for Partial Summary Judgment because the parties dispute many material facts that Plaintiff must prove to prevail on his claim.

## V.   UNION PACIFIC DID NOT DELAY, DENY OR INTERFERE WITH PLAINTIFF'S MEDICAL TREATMENT

In the Amended Complaint, Plaintiff claims that Union Pacific violated 49 U.S.C. § 20109(c)(1) of the FRSA.

> Section 20109(c)(1) of the FRSA imposes two requirements on railroad carriers when an employee is injured during the course of employment. First, the railroad carrier "may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment." 49 U.S.C. § 20109(c)(1). Second, if "transportation to a hospital is requested by an employee who is injured during the course of employment," the railroad carrier must promptly arrange the transportation of that employee to the "nearest hospital where the employee can receive safe and appropriate medical care.

*Armstrong v. BNSF Ry. Co.*, 128 F. Supp. 3d 1079, 1094 (N.D. Ill. 2015).

*Armstrong v. BNSF Ry. Co.*, provides guidance on evaluating a plaintiff's motion for partial summary judgment in an FRSA for delay, denial or interference with medical treatment under 49 U.S.C. § 20109(c)(1).   In *Armstrong*, the plaintiff brought an action against his employer under the Federal Rail Safety Act ("FRSA"), alleging that BNSF delayed procuring medical care after he injured himself at work.   Before trial, plaintiff moved for summary judgment on 49 U.S.C. § 20109(c)(1).   The court denied plaintiff's motion for partial summary judgment because "there [was] a factual dispute about when and how plaintiff requested medical treatment." *Id*. at 1094.

Here, the evidence demonstrates that Plaintiff did not ask to be taken to a hospital until after he had been at the CIP cooling station for at least 20 minutes.   (Union Pacific's SOAF ¶ 1, Union Pacific Response To Plaintiff's SOF ¶ 73.)   When Plaintiff initially left the jobsite with Mr. Robert Herrera, Plaintiff asked him to take him back to his motel room. (Union Pacific Response To Plaintiff's SOF ¶ 66.)   After Mr. Robert Herrera transferred Plaintiff to Mr. Diaz's

41

vehicle, Mr. Diaz asked Plaintiff multiple times, if he wanted to go to the hospital; in response to Mr. Diaz's inquiries about medical treatment Plaintiff said no. (Union Pacific Response to Plaintiff's SOF ¶ 73.)

There is evidence in the record that Union Pacific complied with Plaintiff's request for medical treatment immediately after he asked to be taken to the hospital. (Union Pacific's SOAF ¶1, Union Pacific Response To Plaintiff's SOF ¶ 73.)   The testimony of Mr. Diaz and Mr. Steeley regarding how they responded to Plaintiff's medical request arguably demonstrates that they responded promptly to Plaintiff's request.   *Id.*   As was the case in *Armstrong*, an examination of the record here (the deposition testimony of Mr. Diaz, Mr. Robert Herrera and Mr. Steeley), clearly demonstrates that there are factual disputes about when and how Plaintiff requested medical treatment.  For this reason, the Court should deny Plaintiff's Motion for Partial Summary Judgment on his interference with medical treatment claim.

## VI.   CONCLUSION

Wherefore, Union Pacific Railroad Company respectfully requests that this Court deny Plaintiff's Motion for Partial Summary Judgment and for such other relief as this Court deems appropriate.

Dated this 26 day of June, 2017.

Respectfully submitted,

UNION PACIFIC RAILROAD COMPANY

By:   *s/ Torry N. Garland*
Torry N. Garland, #21624
Union Pacific Railroad Company
1400 W. 52nd Avenue
Denver, CO 80221
(303) 405-5402
(303) 405-5413 – Facsimile
*tngarlan@up.com*

LAMSON, DUGAN & MURRAY, LLP
William M. Lamson, Jr., #12374
Daniel J. Hassing, #24408
David J. Schmitt, #19123
10306 Regency Parkway Drive
Omaha, NE 68114
(402) 397-7300
(402) 397-7824 – Facsimile

ATTORNEYS FOR DEFENDANT
UNION PACIFIC RAILROAD COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2017, I filed and served the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| jim.cox@bcoonlaw.com | James L. Cox, Jr., Esq.<br>BRENT COON & ASSOCIATES, P.C.<br>3801 E. Florida Avenue, Suite 905<br>Denver, CO 80210-2500<br>TEL:     303.756.3243<br>FAX:     303.756.3595 |
| wlamson@ldmlaw.com<br>dhassing@ldmlaw.com | William M. Lamson, Jr., Esq.<br>Daniel J. Hassing, Esq.<br>LAMSON, DUGAN & MURRAY, LLP<br>10306 Regency Parkway Drive<br>Omaha, NE 68114<br>TEL:     402.397.7300<br>FAX:     402W.397.7824 |

 *s/ Torry N. Garland*
TORRY N. GARLAND
Union Pacific Railroad Company
1400 W. 52nd Avenue
Denver, CO  80221
303.405.5402
303.405.5413 (FAX)
tngarlan@up.com